UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-CR-60016-RUIZ

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MOISES ABRAHAM SOTELO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____/ | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM OPPOSING IN PART THE GOVERNMENT'S REQUESTS FOR RESTITUTION**

The United States of America files this Response to Defendant's Memorandum Opposing in part the Government's requests for Restitution and states as follows:

**PROCEDURAL AND FACTUAL BACKGROUND**

1. On January 14, 2021, Defendant was charged by indictment with one count of receipt of child pornography and one count of possession of child pornography.

2. On May 20, 2021, Defendant pled guilty to one count of receipt of child pornography.

3. As was agreed to in the signed factual proffer, Defendant acknowledged his role as a moderator of an online group dedicated to child pornography. He further admitted to using the group to download videos and images of child pornography. Specifically, he admitted to downloading images and videos depicting ten or eleven-year-old girl-on-girl child pornography videos. The forensic examination of Sotelo's cellular phone revealed that the Defendant received videos of children, some under the age of 12 years, engaged in sexual activity between March 19, 2018 and October 18, 2020.

4. The Federal Bureau of Investigations (FBI) submitted the child pornography that was located on his cellular phone to the National Center for Missing and Exploited Children ("NCMEC") to be reviewed for any known child victims. NCMEC determined the Defendant's collection of images contained a total of 1,712 images of known child pornography, 245 videos of known child pornography and a total of 130 series including At School, Best Necklace, BluesPink, Jenny, Sweet Sugar, Lighthouse and Pinkheart.

5. Seven individual victims, whose images were received and possessed by Sotelo, have submitted restitution requests to the Court pursuant to 18 United States Code, Section 2259. These victims are identified as "Maureen," "Pia," "Violet," "Maria," "Tori," "Fiona," and "Jenny".

6. Five images of "Maureen" were identified in Defendant's collection.

7. Sixteen images/videos of "Pia" were identified in the Defendant's collection.

8. Thirty images/videos of "Violet" were identified in the Defendant's collection.

9. Five images/videos of "Maria" were identified in the Defendant's collection.

10. Two images of "Tori" were identified in the Defendant's collection.

11. Three images/videos of "Fiona" were identified in the Defendant's collection.

12. Six images/videos of "Jenny" were identified.

**I.     By Statute, Restitution to Child Pornography Victims is mandatory**

Under 18 U.S.C. § 2259(a) a defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

U.S.C. § 2259(b)(1)(3). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4).

The Supreme Court's in *Paroline v. United States*, 572 U.S. 434 (2014), held that all six categories of losses in Section 2259(b)(3) require a showing of "proximate causation," which has two components: a factual, causal connection between the offense and the injury (cause-in-fact) and a limitation on recovery for remote damages (proximate cause). 134 S.Ct. 1710, 1719.

In *Paroline,* the Supreme Court settled that factual and proximate causation exist in possession of child pornography cases. Id. at 456-57. It explained, "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child pornography crimes, including possession, assuming the prerequisite of factual causation is satisfied." Id. at 449. And factual causation is satisfied where the defendant is among those who viewed the images. Id. at 457.

The Supreme Court then outlined a framework for determining the " 'full amount' of general losses" a particular defendant must pay under § 2259 where the defendant is "one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." Id. at 449. Recognizing that it may be "impossible to trace a particular amount of those losses to the individual defendant," courts should aim to find "an

amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 458. "At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." Id. at 459. The goal is to find a "reasonable" restitution amount that "would not be severe," but would also not be merely "a token or nominal amount." Id. at 458-59.

## II. Restitution may be based on a "reasonable estimate" of the victims' losses

In *US v. Rothenberg*, the Eleventh Circuit Court of Appeals held that an estimate of losses and costs submitted through a signed declaration of the victim's attorney was sufficient evidence for the court to consider in ordering restitution for a victim who had yet to complete all evaluations. 923 F. 3d 1309, 1337-38 (11th Cir. 2019). In that case, the Court recognized that sufficient experience in the area of representing victims was demonstrated and that basing the estimate on other victims in similar circumstances was appropriate.

## III. The absolute minimum restitution order per victim is $3,000

On December 7, 2018, the President signed into law the Amy Vicky and Andy Act (AVAA) amendments to 18 USC § 2259. The absolute minimum restitution order per victim in cases covered by the Act is now $3,000.00. In passing this new per-victim floor for restitution, Congress made important findings about the effect of the circulation of child sex abuse material on the victims:

Sec. 2 Findings

. . .

(2) The harms caused by child pornography begin, but do not end, with
child sex assault because child pornography is a permanent record of that
abuse and trafficking in those images compounds the harm to the child.

. . .

(5) Victims suffer continuing and grievous harm as a result of knowing that a large, indeterminate number of individuals have viewed and will in the future view images of their childhood sexual abuse. Harms of this sort are a major reason that child pornography is outlawed.

(6) The unlawful collective conduct of every individual who reproduces, distributes, or possesses the images of a victim's childhood sexual abuse plays a part in sustaining and aggravating the harms to that individual victim.

Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, (AVAA) S. 2152, PL 115-299, Sec. 2 (2), (5) & (6) (2018). The AVAA applies to the instant offense as this defendant's crime was after passage of the Act on December 7. 2018. The court, however, may still order more than the $3,000.00 minimum restitution where the facts of the case demonstrate that the defendant's offense warrants it.

### IV.     Calculation of Restitution in this Case

The Court must first determine (proximate cause) . . .

If this Court agrees that each of the victim's seeking restitution in this matter have met § 2259's proximate cause requirement, it must then calculate the amount of the losses that "comport" with the defendant's relative role in the causal process that underlies the victim's general losses." Paroline, 134 S. Ct. at 1727.  As the Paroline decision instructs, the Court may consider the nature of the defendant's criminal conduct in relation to the harm caused and the number of offenders that have, and will continue to have, harmed the victim by possessing, receiving and distributing the victims' images.  Id. at 1728.

"[A] court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment."

In this case, although the Defendant only pled guilty to the receipt of child pornography, he received these images and video because of his acknowledged role as a moderator of an online group dedicated to child pornography. He admitted to using the group to download videos and images of child pornography. He was, therefore, more than just a possessor of images he was also involved in the active trade of these images.

1. **Maureen (Lighthouse series)**

The Defendant does not contest restitution for Maureen. The Defendant, however, believes she is only entitled to $3,000. The Government is seeking $10,000 in restitution. The Government's request is supported by the psychological report prepared by clinical psychologist Randall L. Greene who evaluated her. The request is further supported by Maureen's victim impact statements and an affidavit from victim's counsel detailing Maureen's current and future legal cost, all of which have been filed under seal.

Maureen's sexual abuse began when she was between 6 and 7 years old and continued for years. Randall Green, Ph.D., a forensic psychologist, evaluated Maureen and found her to suffer the effects of the crime of image exploitation (also known as child pornography) and to be in need of specialized treatment. Her abuse images have been in circulation for more than a decade. Maureen cannot remember a time when she did not know that other people were watching her abuse, when she was not afraid and ashamed, when she was able to sleep through the night, when she was able just to be herself. She has struggled for many years to make peace

with the past. However, Maureen can never truly put her past behind her, because the images of her violation as a child continue to circulate among men such as the defendant. Clearly, Defendant's receiving, possessing and viewing Maureen's images have contributed to her damages.

According to counsel for Maureen, her total losses exceed $400,000 and as of the last audit conducted by her attorney, she has only received $187, 528 from other possessors and traders of child pornography. Dr. Green estimates that Maureen will need treatment that costs between $172,000 and $189,000. The victim's attorney is currently awaiting completion of the vocational assessment for Maureen. The Eleventh Circuit in United States v. Niezen, 834 Fed.Appx. 533, (11th Cir. 2020) found that $10,000 was an appropriate calculation of Maureen's restitution award.

The Defendant received 4 images and 1 video depicting the sexual abuse of Maureen. One (1) of the images was received on September 30, 2020 and one (1) of the videos was received on January 15, 2020. The remaining files were cached, meaning the receipt date could not be determined. The Court, therefore, at a minimum must award Maureen $3,000 in restitution as the image and video file depicting the sexual abuse of Maureen was received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018.

The Government, however, maintains that the appropriate restitution order for Maureen is $10,000 which is based on her total losses in conjunction with his active role as a moderator of the online group dedicated to the trade of child pornography.

### 2. Pia (Sweetsugar series)

The Defendant does not contest restitution for Pia. The Defendant, however, believes she

is only entitled to $3,000. The Government is seeking $5,000 in restitution. Counsel for Pia has provided a restitution claim consisting of a psychological evaluation conducted by Dr. Green. The request is further supported by Pia's victim impact statements and an affidavit from victim's counsel detailing current and future legal cost and an employability notice all of which have been filed under seal as Exhibit B.

Pia was four years old at the time that she was abused and photographed. Still a minor, Pia now suffers from depression, anxiety, stress disorder, educational difficulties, and suicidal ideation. Pia is aware that images of her being sexually abused are available for view on the internet. During her psychological evaluation she is quoted as "hoping [viewers] won't know what [she] looks like now" and worrying that "[her] name might be attached to the pictures."

Pia's losses consist of psychological treatment needs of $262,000-299,000 according to Dr Green's report and her vocational losses are between $800,000 and $1.4 million. Pia's total losses are estimated to be between 1.4 and 2 million dollars and as of the last audit Pia has received restitution of $423,827.30.

The Eleventh Circuit in *United States v. Groover*, Nos. 20-12760, 20-14435, 2021 WL 3205719, at *5 (11th Cir. July 29, 2021) affirmed the District Court's order that $5,000 was an appropriate calculation of Pia's restitution award. In *US v. Rothenberg* 923 F.3d 1309, 1337-38 (11th Cir. 2019), the Eleventh Circuit affirmed the District Court's award of $5,000 to Pia; see also *United States v. Niezen*, 834 Fed.Appx. 533, (11th Cir. 2020).

The Defendant received 5 images and 11 videos depicting the sexual abuse of Pia. The Defendant received four (4) of the videos of Pia on January 15, 2020 and he received one (1) of the image files on February 29, 2020. The remaining images and videos were either received prior to December 7, 2018 or were cached files. The Court, however, at a minimum must award

Pia $3,000 as the image and video file depicting the sexual abuse of Pia was received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018. The Government, however, maintains that the appropriate restitution order for Pia is $5,000 which is based on the prior rulings of the Eleventh Circuit and the Defendant's active role as a moderator of the online group dedicated to the trade of child pornography.

### 3. Violet (At school series)

The Government is requesting the Defendant be ordered to pay Violet $10,000 in restitution. The Defendant believes that no restitution should be ordered for Violet because she has not yet undergone therapy. Under the relevant provisions of 18 U.S.C. § 2259(c)(2), victims may recover the "full amount" of their losses that includes "any costs incurred, or that are *reasonably projected to be incurred in the future*, by the victim, as a proximate result of the offenses involving the victim." Id. (emphasis added). Expert reports are one such cost.

Counsel for Violet has provided a forensic psychological examination by Dr. Randall Green. The report of Dr. Green is offered to document the injuries which Violet has suffered as a result of the viewing and spread of the images of her sexual abuse. Dr. Green is a licensed clinical psychologist, very experienced in treating and evaluating victims of sexual abuse. He has experience in treating offenders as well. His CV is provided to substantiate his qualifications to inform the court of the extent and nature of her harm. Exhibit 1—Green Report and CV. In addition to his testing and interview with Violet and collateral sources, Dr. Green has reviewed medical and school records, as well as the records of the criminal prosecution of Violet's original perpetrator.

At the time of Dr. Green's report, Violet was not suffering from clinically diagnosed

psychological problems. Since then, she has been on a bit of a roller coaster. She is now a young teenager and her parents have discovered that she was engaged in self harm through cutting. As an adolescent, she is going through all of the normal angst of puberty but with the added history of a victim of sexual assault and image exploitation.

Although Violet does not consciously know now of the extent of circulation of the images of her abuse, at the time she turns 18 the United States Department of Justice, through a victim advocate, will be required by statute to visit her directly and explain her rights as a victim of CSAM crimes to receive notice of the critical parts of each federal case involving her images. Violet's parents will soon have to have the difficult explanatory discussion with her ahead of this visit.

Dr. Green has projected Violet's estimated total range of costs for counseling over the coming years using today's cost structure between $72,400.00 - $118,025.00. See his report at Ex. 1, pp. 18-19. Dr. Randall Green identifies a number of psychological hurdles facing Violet as she matures:

> • Emotional destabilization upon being confronted with the reality of circulation of the images as will come at least by age eighteen;
> • Anxiety and fear from the anonymity of the perpetrators of the continued downloading and the worry that such consumers will identify and then stalk her;
> • Avoidance and increased attempts to control the world around her;
> • Distrust and hypervigilance of males in general and a heightened sense of betrayal by her original abuser stemming from realization of the unknown boundaries of the distribution of the images/videos;

> • Guilt stemming from the realization that one's own images are doubtless being used to groom other children for abuse;
>
> • Disruption of educational and/or vocational efforts in that the ability to concentrate is disrupts by triggers resulting in perseveration, and fears generating avoidance and changes of school and employment.

See Green report, Ex. 1 pages 14-17. These circumstances are among the many sequela of Violet's being a victim of child sex abuse image exploitation. She is in need of therapy to help her find a path through the hurdles and barriers she faces and to learn the coping skills she will need for any chance at successful adult life. Dr. Green recommends both individual and relationship therapy for Violet with costs detailed at pages 18-19 of his report.

Violet has also been evaluated by Sharon Cooper, M.D. a developmental and forensic pediatrician who has lectured and testified internationally on the effects of child sex abuse image exploitation on children. Dr. Cooper has noted that Violet is still a minor and not yet of an age to truly understand the wide-reaching effects of the spread of her images online. Dr. Cooper foresees a number of complications for Violet as this reality becomes evident to her. These include depression, anxiety, disruptive behaviors, eating disorders, sleep dysfunction, a non-delusional paranoia, and a loss of spiritual faith. Excessive levels of serum cortisol which are the result of the stress and anxiety as a result of the knowledge of continued downloading of the abuse images cause a wear and tear on all bodily functions above and beyond the normal conditions. The long-term impact of elevated cortisol levels includes a greater susceptibility to a number of debilitating medical conditions such as diabetes, cancer, heart disease, stroke and early mortality. Dr. Cooper has made a projection of the additional medical costs more likely than not to a reasonable medical certainty to be incurred by Violet due to the image exploitation

she has suffered. These total $647,807.00 and are the result of the image exploitation disaggregated from the harm of the original hands-on abuse. See Cooper Report, Ex. 7, page 4.

Violet will soon learn the devastating news that her sexual abuse images are circulated online and will never stop haunting her. The currently documented amount of Violet's losses is $758,343.41 to $803,968.41.This is comprised of a range of $72,400.00 to $118,025.00 in future counseling costs for her as a result of her anticipated understanding of the existence of the circulation of images of her sexual abuse, $647,807.00 in projected costs of increased medical care attributable to image exploitation and disaggregated from ordinary medical care, together with $47,409.50 in documentation expenses related to Violet's restitution requests and also attorney's fees.

To date, Violet has received 291 prior restitution orders which total $226,228. The Defendant possessed 18 images and 12 videos depicting the sexual abuse of Violet. The Defendant received three (3) of the images of Violet in August and October of 2020. The remaining images and videos were either received prior to December 7, 1918 or were cached files. The Court at a minimum must award Violet $3,000 as the image and video file depicting the sexual abuse of Violet was received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018.

The Government, however, maintains that the appropriate restitution order for Violet is $10,000 which is based on the number of her files he possessed and the Defendant's active role as a moderator of the online group dedicated to the trade of child pornography.

  4.  **<u>Maria (Best Necklace series)</u>**

The Government is requesting the Defendant be ordered to pay Maria $5,000 in restitution. The Defendant believes that no restitution should be ordered for Maria because she

has not established the costs of past or future therapy. Defendant's claim, however, it contrary to the current case law. In *US v. Rothenberg* 923 F.3d 1309, 1337-38 (11th Cir. 2019), the Eleventh Circuit held that an estimate of losses and costs submitted through the signed declaration by the attorney for the victim is sufficient evidence for the court to consider in ordering restitution for a victim who has yet to complete all evaluations. In that case, the court recognized that sufficient experience in the area of representing victims was demonstrated and that basing the estimate on other victims in similar circumstances was appropriate.

Counsel for Maria, Carol Hepburn, did provide a declaration attesting to a projection of general losses for Maria of $125,000.00 based on an expectation of the costs of her treatment plan, vocational losses, and documentation of her losses. Since 2008, Carol Hepburn has been representing individuals who are survivors of child sexual assault image crimes (CSAM) and now represent over twenty such individuals. Treatment costs for each of the previously evaluated female clients has been very near or in excess of $100,000.00. Hepburn attested to the fact that she had no reason to believe that Maria's evaluation will be any different. Hepburn's plan for Maria is to retain a forensic psychologist with extensive experience in performing forensic evaluations of individuals suffering child sex abuse and related image exploitation crimes.

Maria has received no restitution as of this date. The fund created by Congress in 2018 for survivors who have not received restitution has yet to be implemented by the Department of Justice. Maria, and many others, have no ability to apply for monetary assistance because the regulations have not been promulgated and the application forms have not been approved. Restitution is critical for Maria.

The Defendant possessed 3 images and 2 videos depicting the sexual abuse of Maria. One of the images he received was on March 8, 2020. The remaining files were either cached or

received prior to 2018. The Court at a minimum must award Maria $3,000 as the image file depicting the sexual abuse of Maria which was received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018.

The Government, however, maintains that based on Maria's total losses and the Defendant's active role as a moderator of the online group dedicated to the trade of child pornography that the Court order the Defendant to pay Maria $5,000 in restitution.

   5.  **Erika & Tori (Pinkheart sisters series)**

The Government is requesting the Defendant be ordered to pay $3,000 in restitution to Tori. Erika is not pictured with Tori; therefore the Government is not seeking restitution for Erika. The Defendant opposes the $3,000 restitution award for Tori. Defendant claims that Tori is not aware that images of her sexual abuse exist therefore it is impossible to assess the injuries that she will suffer. The victim, however, in her impact statement states, "the fact that there are pictures out there make it so that I can't help but remember the things that I desperately want to erase." She goes on to state, "I feel hopeless, and I get embarrassed about it. I feel self-conscious and exposed. I think about eating all day and I'm worried that my weight changes when I get stressed. Sometimes I feel scared, but mostly numb a lot of the time. I cannot escape the reality of those pictures, so I feel nothing".

The Defendant received 2 images depicting the sexual abuse of Tori. The Defendant received both images in 2020. The Court at a minimum must award Tori $3,000 as the images depicting the sexual abuse of Tori were received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018. The Eleventh Circuit in United *States v. Niezen*, 834 Fed.Appx. 533, (11th Cir. 2020) found that

$3,000 for each Erika and Tori was an appropriate calculation of their restitution.

At this point in time, the full accounting of Tori's losses has not yet been completed because forensic examinations are still needed. According to victim's attorney the likely cost of the psychological and economic reports is approximately $20,500 for each client. Tori have not yet received enough restitution to cover the cost of these reports. To date, Tori has received $18,078 in restitution. The Government respectfully recommends that the Court order the Defendant to pay Tori $3,000 in restitution.

6. **Fiona (BluesPink series)**

The Government is requesting the Defendant be ordered to pay $3,000 in restitution to Fiona. The Defendant claims she in ineligible for restitution because she has not received psychological counseling. The "BluesPink" child pornography series in which Fiona are depicted in is one of the most widely trafficked sets of child sex abuse images in the world. The ongoing collection and trading of their child sex abuse images have caused Fiona long-lasting and permanent harm. Counsel for Fiona has provided a psychological evaluation conducted by Dr. Elizabeth Toplyn, victim impact statements and a declaration of attorney's fees. The psychological exam as well as the impact statements indicate that Fiona has struggled from time to time and has considered suicide. The reports also indicated that Fiona has been unable to receive counseling due to financial constraints. The Defendant received 3 images depicting the sexual abuse of Fiona. The Defendant received one (1) of the images on May 27, 2020. The Court at a minimum must award Fiona $3,000 as one of the images depicting the sexual abuse of Fiona was received after the effective date of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018.

Fiona's total losses are over 3 million and to date she has received $24,000 in restitution,

The Government respectfully recommends that the amount of restitution that the Court order the Defendant to pay Fiona $3,000 in restitution.

7. **Jenny (Jenny series)**

The Government is seeking $3,000 in restitution for Jenny. The Defendant claims that Jenny is ineligible for restitution because she elected not to undergo psychological therapy. In support of her request, Jenny's attorney submitted psychological and economic reports by Doctor Faller and Dr. Toplyn and Jenny's victim impact statement. In her victim impact statement, Jenny stated that she worried about the images of her sexual abuse that were "out there" and feared being recognized in public. Jenny expressed a strong desire to forget the abuse she had suffered but explained that "[w]ith the pictures still out there I can't."

The "Jenny" series is widely trafficked and is notorious for its graphic content and sadomasochistic depictions, some involving animals. The unending collection and trading of her child sex abuse images has caused Jenny long-lasting and permanent harm. Jenny's total losses are $7,488,628 and to date she has received $113,862 in restitution. In this case, the Defendant received 6 images of Jenny. The Defendant received one (1) of the images on September 14, 2020. The remaining images and videos were either cached or received prior to December 7, 2018. The Government respectfully recommends this Court order the Defendant to pay Jenny $3,000 in restitution pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 which was passed December 7, 2018.

## **CONCLUSION**

For the reasons stated above, the Government respectfully requests this Court issue orders of restitution in the amounts requested by the United States which total $39,000.

Respectfully submitted,<br>
JUAN ANTONIO GONZALEZ<br>
UNITED STATES ATTORNEY

By:   */s/ M. Catherine Koontz*
     M. Catherine Koontz
     Assistant United States Attorney
     Court No. A5501929
     500 East Broward Boulevard
     Fort Lauderdale, FL 33394
     Telephone: (954) 660-5946
     Email: Catherine.koontz@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by CM/ECF this 29th day of December 2021 to all counsel of record.

>*/s/M. Catherine Koontz*
>Assistant United States Attorney