**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CR-60016-RAR**

**UNITED STATES OF AMERICA**

v.

**MOISES ABRAHAM SOTELO,**

    Defendant.

_____/

**ORDER ON RESTITUTION**

**THIS CAUSE** comes before the Court following a restitution hearing held on January 4, 2022 [ECF No. 60] ("Hearing"). Prior to the Hearing, the Government filed a Memorandum Regarding Restitution [ECF No. 50] ("Government Memorandum") on November 29, 2021. On November 30, 2021, Defendant Sotelo filed a Memorandum Opposing in Part the Government's Requests for Restitution [ECF No. 51] ("Opposing Memorandum") and on December 29, 2021, the Government filed a Response to Defendant's Opposing Memorandum [ECF No. 59] ("Reply").

Having carefully considered the arguments set forth at the Hearing, the parties' submissions, the record, and being otherwise fully advised, restitution is hereby ordered as set forth herein.

**BACKGROUND**

On May 20, 2021, Defendant pled guilty to one count of receipt of child pornography. [ECF No. 21] ("Plea Agreement"). Specifically, Defendant was a moderator in a LiveMe group, where Defendant downloaded videos and images of child pornography. *See* [ECF No. 22] ("Factual Proffer"). As moderator of the group, Defendant allowed other members of the group to post links to child pornography that were then distributed amongst the LiveMe group. *Id*. A forensic examination of Defendant's cellular phone revealed videos of children, some under the

age of twelve (12), engaged in sexual activity between March 19, 2018 and October 18, 2020. *Id*. In total, the National Center for Missing and Exploited Children ("NCMEC") identified 1,712 images of known child pornography, 245 videos of known child pornography, and a total of 130 series of child pornography. Government Mem. ¶ 4. On August 2, 2021, Defendant was sentenced to one hundred and twenty-one (121) months of incarceration, [ECF No. 30] ("Judgment"), with restitution to be determined.

## **LEGAL STANDARD**

To determine whether a child victim is entitled to an award of restitution, the Court must first look to 18 U.S.C. § 2259. This mandatory restitution statute was amended on December 7, 2018 with the passage of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. *See* 18 U.S.C. § 2259 (2018). This statute provides the framework for determining restitution in a case involving a defendant convicted of trafficking in child pornography. 18 U.S.C. § 2259(b)(2) (2018). It states, in pertinent part, as follows:

> **(A) Determining the full amount of a victim's losses.--**The court shall determine the full amount of the victim's losses[1] that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>
> **(B) Determining a restitution amount.--**After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.

---

[1] The term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim, including--(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim. 18 U.S.C. § 2259(c)(2) (2018).

> **(C) Termination of payment.--**A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

*Id.* The Government bears the burden of proving the restitution amount by a preponderance of the evidence. *See United States v. Rothenberg*, 923 F.3d 1309, 1337 (11th Cir. 2019) (citations omitted). The evidence presented must bear "sufficient indicia of reliability to support its probable accuracy." *Id.* Not only is the issuance of a restitution order under this section mandatory but a court may not decline to issue an order under this section due to the "economic circumstances of the defendant." 18 U.S.C. § 2259(b)(4) (2018).

Generally, after a district court determines the amount of loss suffered by the victim (as the result of their images being continually trafficked), they must assess the defendant possessor's relative role in causing those losses. *See Rothenberg*, 923 F.3d at 1326. To aid in its determination, courts *may* consider the following factors: (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role." *Id*. at 1326 (quoting *Paroline v. United States*, 572 U.S. 434, 460 (2014)). These factors are "rough

guideposts" and should not be treated as a "rigid formula." *Id*. District courts must use both "discretion and sound judgment" to ensure the final restitution amount is "reasonable and circumscribed." *See Rothenberg*, 923 F.3d at 1327 (quoting *Paroline*, 572 U.S. at 459).

## ANALYSIS

The Court begins by noting that an order of restitution is mandatory in the instant case, where Defendant has pled guilty to trafficking in child pornography. 18 U.S.C. § 2249(b)(4) (2018); *see also* Factual Proffer. As a starting point, it is important to address the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("Act") and its effect on restitution orders relating to conduct occurring on or after December 7, 2018. Prior to passage of the Act, 18 U.S.C. § 2259 did not prescribe a minimum amount for an award of restitution. As amended, however, courts must now award restitution in an amount no less than $3,000. *See* 18 U.S.C. § 2259(b)(2)(B) (2018).

The Court will proceed by addressing Defendant's overarching objections before turning to the seven restitution awards sought by the Government.

### I. *Defendant Sotelo's objection for lack of predicate is overruled.*

Defendant objects to the Court's usage of a spreadsheet provided by the Government, as well as the NCMEC report identifying known child victims found amongst the files on Defendant's electronic devices. [ECF No. 64] ("Objections"). The spreadsheet at issue lists the names of the child victims, corresponding series names, and the date the images or videos were created or modified. [ECF No. 63-2] ("Spreadsheet"). The NCMEC report lists the specific file names, corresponding series names, and the law enforcement point of contact who can provide the age verification for the child. [ECF No. 63-1] ("Child Identification Report") at 3.

Specifically, Defendant asserts that the Government has failed to establish "(1) that any of the victims for which it sought restitution were depicted in images on Sotelo's computer, and (2)

any of these victims were on images on Sotelo's computer before December 7, 2018." Objections at 1. Defendant previously raised this objection at the Hearing, and the Court, unsatisfied with the Government's factual proffer, requested additional evidence to support its claims for restitution. Specifically, the Court requested evidence denoting when Defendant accessed and/or downloaded the relevant files to determine whether the Act was applicable (triggering the $3,000 minimum for an award of restitution). After the Hearing, the Government submitted the Spreadsheet and the Child Identification Report.

Having carefully reviewed the Spreadsheet and the Child Identification Report, the Court is satisfied that this evidence bears the "sufficient indicia of reliability to support its probable accuracy." *See Rothenberg*, 923 F.3d at 1327 (quoting *Paroline*, 572 U.S. at 459). Courts may consider hearsay evidence in determining an award of restitution—so long as the defendant has an opportunity to refute the evidence and it bears "minimal indicia of reliability." *See United States v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989) (citing *United States v. Rodriguez*, 765 F.2d 1546, 1555 (11th Cir. 1985)) (cleaned up). As proffered by the Government at the Hearing, the Child Identification Report was compiled by the NCMEC—a national organization tasked with the responsibility of maintaining the database used to identify child victims who have been previously identified by law enforcement. Similarly, the Spreadsheet was compiled by law enforcement as a means of aggregating when images and/or video of each child victim were accessed or created.

This evidence connects the images found on Defendant's computer (which were inspected by Defendant's prior counsel) to the child victims identified by the NCMEC; the evidence also enables the Court to ascertain when the pornographic materials were accessed or created by Defendant. *See* Child Identification Report at 101, 145, 16, 20, 114, 23, 92. Taken together, the Court finds that the evidence presented by the Government is sufficiently reliable.

Page 5 of 16

## II. Individual Awards of Restitution

The Court finds that restitution is mandatory for each victim requested by the Government. The Government has provided sufficient evidence, by way of the Child Identification Report and Spreadsheet, to identify each child victim found in the photo and video files on Defendant's computer. *Id.* Further, in all cases, the Spreadsheet denotes that at least one photo or video file of each child victim was downloaded or created on or after December 7, 2018. *See generally* Spreadsheet. Therefore, the Court will apply 18 U.S.C. § 2259, as amended by the Act, to determine the amount of restitution due to each child victim. In doing so, the Court notes that despite the horrific nature of the materials possessed by Defendant and the overriding need to make the victims whole, the Court must ensure that due process is followed and there is sufficient evidence to support the amounts requested by the Government.

### a. Maureen

In the case of Maureen, the Government has requested an award of restitution in the amount of $10,000. Gov. Mem. at 9. In response, Defendant consents to the fact that restitution is due, but disagrees with the Government on the amount of the award. Opposing Mem. at 5. However, at the Hearing, Defendant objected to Maureen receiving any restitution at all.

Based upon the evidence provided by the Government—including a Forensic Psychological Examination, Witness Impact Statement, and affidavit detailing Attorney's Costs—the Court finds that Maureen's total losses are between $185,528.18 and $205,128.18.[2] *See* [ECF

---

[2] The Court notes that the Government, in its Memorandum, submits Maureen's total losses over the next five (5) years will be more than $440,000. Gov. Mem. at 9. They explain that these losses were estimated by counsel. *Id.* at 8. However, the evidentiary submissions do not support such an amount. *See generally* Ex. A. While the Eleventh Circuit has found that a signed declaration from counsel detailing estimates of total losses can constitute sufficient evidence for an award of restitution, in this case, the declaration signed by counsel only denotes a breakdown of attorney's costs incurred in the litigation; it does not include estimates of items such as transportation, medication, education, childcare, wage loss, or attorney's fees. *See Rothenberg*, 923 F.3d at 1337-38. Therefore, the Court relies on its own calculations based on the documents submitted by the Government. *See* Ex. A.

No. 53-1] ("Exhibit A"). These losses include Maureen's total estimated therapy costs and attorney's costs. *Id*. at 25, 46.

Defendant argues that § 2259(b)(2)(c) forecloses any additional award of restitution because Maureen's estimated cost of therapy is between $170,200 and $189,800 and Maureen has received $187,528 in prior restitution awards. Reply at 7. Defendant is correct that a victim's total aggregate recovery cannot exceed the full amount of the victim's demonstrated losses—measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under the section. *See* 18 U.S.C. § 2259(b)(2)(c) (2018). But Defendant would have the Court mistakenly focus only on the estimated cost of *therapy* in determining the victim's full amount of losses. As defined in § 2259(c)(2), the full amount of a victim's losses includes much more than costs related to therapy. *See* 18 U.S.C. § 2259(c)(2)(A)-(E) (2018). In this instance, Maureen's losses (which include both therapy costs and attorney's costs) total $205,128.18. Therefore, she has not yet recovered the full amount of her losses. Because she has not collected restitution in excess of her losses, this Court may still award restitution.

Having established that restitution is due, and that § 2259(b)(2)(c) does not preclude an award of restitution, the Court turns to the *Paroline* factors to determine the relative role that Defendant played in causing Maureen's losses. Upon consideration of several key factors—particularly the number of images possessed by Defendant (4 images and 1 video); the amount of restitution previously collected by the victim ($187,528); and whether Defendant played a role in the production of the images (he did not)—the Court finds that an award of restitution in the amount of $3,000 is appropriate.[3]

---

[3] The Government argues that this Court should consider a ruling by the Eleventh Circuit affirming an award of $10,000 to Maureen. *See United States v. Niezen*, 834 F. App'x 533, 537 (11th Cir. 2020). In the

### b. Pia

In the case of Pia, the Government is requesting restitution in the amount of $5,000. Gov. Mem. at 9. In response, Defendant consents to the fact that restitution is due, but disagrees with the Government as to the amount of the award. Opposing Mem. at 4. Defendant argues that $3,000 is an appropriate amount of restitution.

Based upon the evidence provided by the Government—including a Forensic Psychological Examination, Witness Impact Statement, Employability Analysis, and affidavit detailing Attorney's Costs—the Court finds that Pia's total losses are between $1,073,919.44 and $1,710,919.44. *See* [ECF No. 53-2] ("Exhibit B"). These losses include lost future earnings due to her status as a child victim. *Id*. at 36-42.

At the Hearing, Defendant argued that in awarding restitution, the Court should only consider lifetime therapy costs—and in Pia's case, forensic evaluation fees—when determining the victim's full amount of losses. But the Court does not enforce statutes selectively. Here, the Government has presented evidence of Pia's lost future earnings by way of an Employability Analysis. That analysis considers the ongoing challenges related to Pia's exploitation and its impact on her future earning capacity. *Id*. at 42. At the Hearing, Defendant argued that "lost income", in the context of future earnings, should not be considered by the Court. He is mistaken. "Lost income", and specifically, lost future earnings, have been considered by courts around the country when determining a victim's total losses. *See United States v. Sainz*, 827 F.3d 602, 604 (7th Cir. 2016) (acknowledging financial losses including future lost earnings); *see also United*

---

underlying case, Judge Moore found an award of $10,000 to be appropriate for Maureen where Defendant possessed one image of Maureen, and where, at the time, Maureen had collected approximately $51,000 in restitution. *See* Case No. 18-CR-20852-KMM, [ECF No. 69] at 31-32. Today, Maureen has collected approximately 3 times that amount. *See Niezen*, 834 F. App'x at 537 (holding that a court may consider the number of past defendants who have contributed to the victims' losses in determining an award of restitution). As such, the factors under consideration by the Court have substantially changed, rendering a different award of restitution appropriate in this case.

*States v. Block*, No. 17-50068, 2020 WL 1322067, at *4-5 (D.S.D. Mar. 20, 2020); *United States v. Chapman*, No. 18-250, 2021 WL 3879124, at *4 (D. Minn. Aug. 31, 2021); *U.S. v. DiLeo*, 58 F. Supp. 3d 239, 243-44 (E.D.N.Y. Nov. 4, 2014) (approving a total loss amount that included lost future earnings).

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Pia's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (5 images and 11 videos); the amount that has been previously collected by the victim ($423,827.30); awards of restitution made by other district courts; and whether Defendant played a role in the production of the images (he did not)—the Court concurs with the Government that an award of restitution in the amount of $5,000 is appropriate.[4]

### c. Violet

In the case of Violet, the Government is requesting an award of restitution in the amount of $10,000. Gov. Mem. at 10. Defendant maintains that Violet is not entitled to restitution because she is not currently undergoing psychological treatment. Opposing Mem. at 6-7.

Based upon the evidence provided by the Government—including a Forensic Psychological Examination; multiple studies addressing the psychological profiles of adult survivors of child exploitation; a letter from Dr. Hepburn providing an estimated cost for medical treatments necessitated by image exploitation; other cases in which district courts have awarded victims like Violet restitution; and a declaration detailing attorney's fees and costs—the Court

---

[4] The Court finds that Defendant's causal role in Pia's losses is greater than Maureen's due to the number of images and videos found on Defendant's computer.

Page **9** of 16

finds that Violet's total losses are between $767,616.50 and $813,241.50.[5] *See* [ECF No. 53-3] ("Exhibit C"). These losses include those that are projected to occur in the future.

At a minimum, Violet has incurred losses amounting to $47,409.50 in attorney's costs. *See* Ex. C at 251. As the Court has previously explained, any loss (not just costs related to present therapy needs) triggers a mandatory award of restitution. *See* 18 U.S.C. § 2259 (b)(2)-(4) (2018). A mandatory award of restitution is only excepted if the victim has received restitution in excess of her full amount of losses. *See* 18 U.S.C. § 2259(b)(2)(c) (2018). Today, Violet has received restitution orders totaling $226,228. Reply at 12. The Court need look no further than the statute itself to answer the question of whether projected therapy and medical costs can be considered in calculating a victim's total losses. The answer is yes. *See* 18 U.S.C. § 2259(b)(2)(a) (2018) ("The court shall determine the full amount of the victim's losses that were incurred or *are reasonably projected to be incurred* by the victim….") (emphasis added); *see also United States v. Osman*, 853 F.3d 1184, 1189-90 (11th Cir. 2017) (holding that a restitution order under § 2259 may include restitution for future therapy expenses as long as the award reflects a reasonable estimate of those costs and is based on record evidence) (citations omitted).

Here, through multiple studies describing the psychological effects on adult survivors of child exploitation and two doctors' reports, the Government has shown, by a preponderance of the evidence, that it is more likely than not Violet will need the projected therapy and medical treatments laid out by Dr. Green and Dr. Cooper. *See generally* Ex. C. Therefore, the Court must include these projected costs when calculating the full amount of Violet's losses.

---

[5] The Government has estimated total losses between $758,343.41 and $803,968.41. Upon review, the Court calculates a slightly different amount and presumes the Government made a numerical error. The Court bases its calculations upon the estimated cost of therapy ($72,400-$118,025), $647,807.00 of projected medical costs, and $47,409.50 in attorney's costs.

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Violet's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (18 images and 12 videos); the amount of prior restitution orders ($226,228); and whether Defendant played a role in the production of the images (he did not)—the Court concurs with the Government that an award of restitution in the amount of $10,000 is appropriate.[6]

### d. Maria

In the case of Maria, the Government is requesting an award of restitution in the amount of $5,000. Gov. Mem. at 10. Defendant posits that Maria is not entitled to restitution because the Government has not shown that she is aware of her images being trafficked and has not sufficiently established the costs of past or future therapy. Opposing Mem. at 7. The Court will address each of these arguments in turn.

At the Hearing, Defendant contended that a victim cannot be a victim if they are not aware that their images are being trafficked. This argument maintains that awarding restitution to a victim who is "unaware" is too speculative because the victim, upon learning that her images are being trafficking, may opt out of any type of therapy. At the outset, the Court again notes that therapy is not the only type of loss for which a victim may be compensated. While a victim may choose not to undergo therapy, that does not mean she will not have incurred other types of losses—including, but not limited to, the cost of legal counsel to represent her interests prior to becoming aware that such images exist. Further, whether a victim is currently aware that her images are being trafficked on the internet should not affect whether that victim is (1) considered

---

[6] The Court finds that Defendant's causal role in Violet's losses is greater than Maureen and Pia's due to the number of images and videos found on Defendant's computer.

a victim[7] or (2) is entitled to an order of restitution. This is particularly true in cases where the Government has provided the Court with a reasonable estimate of the victim's losses, including the cost of future therapy. *See Osman*, 853 F.3d at 1191–92.[8]

As noted by the Eleventh and Seventh Circuits, "[w]e do not believe that Congress sought to create such a cumbersome procedure for victims to receive restitution. In enacting section 2259, it is clear that Congress intended to provide victims of sexual abuse with expansive relief for 'the full amount of ... [their] losses' suffered as a result of abuse." *Osman*, 853 F.3d at 1192 (citing *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001)). In passing the Act, Congress explicitly stated that "[i]t is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims." *See* S.2152 – 115th Congress (2017-2018): Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, S.2152, 115th Cong. (2018), https://www.congress.gov/bill/115th-congress/senate-bill/2152. In *Paroline*, the Supreme Court recognized that, "every viewing of child pornography is a repetition of the victim's abuse." 572 U.S. at 457. Any decision by this Court to deny Maria restitution because she does not yet know her images[9] have been widely trafficked would be inapposite to Congress's clear goal of providing victims of sexual abuse with expansive relief.

---

[7] A victim, in cases involving possessors of child pornography, is the person whose childhood abuse appears in the pornographic materials possessed. *See Paroline*, 572 U.S. at 439. Maria is undoubtedly a victim.

[8] The Court notes that the defendant in *Osman* is distinguishable from the Defendant in this case in that Osman was also a producer of child pornography.

[9] In accordance with the Federal Crime Victims' Rights Act, victims of child pornography production whose images have been distributed are given the option to be notified of and to participate in the prosecution of those who possess their images. *See* Federal Bureau of Investigation, *Notification Preference*, July 2012, https://ucr.fbi.gov/stats-services/victim_assistance/notification-preference ("The

Based upon the evidence provided by the Government—a declaration of victim's counsel in support of restitution—the Court finds that Maria's total losses are $125,000. *See* [ECF No. 53-4] ("Exhibit D"). In the declaration, counsel details her experience representing over twenty (20) survivors of child sexual assault image crimes. Ex. D. at 2, ln. 19. She explains that the treatment costs in each of her previously evaluated female clients were very near or in excess of $100,000. *Id*. at 4, lns. 4-5. Contrary to Defendant's position, the Court finds that the Government has sufficiently established Maria's projected costs of future therapy. *See Rothenberg*, 923 F.3d at 1338 (holding that a signed declaration from victim's counsel stating the projected costs of victim's future medical costs was sufficient evidence to support the victim's restitution request). As in *Rothenberg*, counsel for Maria has an extensive background in this area of the law.

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Maria's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (3 images and 2 videos); the amount of prior restitution orders ($0); the number of cases currently being prosecuted (in the hundreds); the percentage of total losses this restitution award would represent; and whether Defendant played a role in the production of the images (he did not)—the Court finds that an award of restitution in the amount of $3,000 is appropriate.

### e. Tori

In the case of Tori, the Government is requesting an award of restitution in the amount of $3,000. Gov. Mem. at 11. Once again, Defendant takes the position that Tori is not entitled to restitution because the Government has not shown that she is aware of her images being trafficked.

---

FBI will take reasonable steps to contact the victim once he or she reaches the age of 18 to provide him or her with notice of these rights and determine the victim's notification preference."). While a minor's guardian may shield the child victim from this knowledge in their youth, at the age of 18, the victim will undoubtedly be made aware of the existence of these images.

Opposing Mem. at 10. However, Tori's Victim Impact Statement directly disproves this contention. [ECF No. 53-5] ("Exhibit E") at 17. She writes, "People like him [meaning her abuser] still share the images of what happened to me." *Id*.

Based upon the evidence provided by the Government—including a letter detailing a restitution request from Tori's counsel; the approximate cost of the forensic examinations needed in the case; and a report of psychological consultation for Tori—the Court finds that Tori's total losses are $20,500.[10] *See* Ex. E at 3.

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Tori's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (2 images); the amount of prior restitution orders ($18,078); and whether Defendant played a role in the production of the images (he did not)—the Court concurs with the Government that an award of restitution in the amount of $3,000 is appropriate.

### f. Fiona

In the case of Fiona, the Government is requesting an award of restitution in the amount of $3,000. Gov. Mem. at 11. Defendant takes the position that Fiona is not entitled to restitution because she has not received psychological counseling and there is no projected future cost of therapy. Opposing Mem. at 10. The Court need not repeat its analysis on this point—losses other than those for psychological treatment warrant an award of restitution.

Based upon the evidence provided by the Government—a letter detailing a restitution request from Fiona's counsel; a victim impact statement from Fiona's mother; a report of

---

[10] The Court notes that Tori's current total amount of loss is almost certainly understated, as counsel for Tori is still in the process of obtaining the necessary documentation detailing her client's losses. Reply at 15.

psychological consultation by Kathleen Faller; and a letter calculating the value of certain losses for Fiona by Smith Economics Group—the Court finds that Fiona's total losses are at least $2,558,635.[11] *See* [ECF No. 53-6] ("Exhibit F").

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Fiona's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (3 images); the amount of prior restitution ordered ($24,000); and whether Defendant played a role in the production of the images (he did not)— the Court concurs with the Government that an award of restitution in the amount of $3,000 is appropriate.

### g. *Jenny*

In the case of Jenny, the Government is requesting an award of restitution in the amount of $3,000. Gov. Mem. at 11. Defendant maintains that Jenny is not entitled to restitution because she has elected not to receive psychological counseling and therefore has not incurred any therapy costs. Opposing Mem. at 12. Again, the Court need not repeat its analysis on this point—losses other than those for psychological treatment warrant an award of restitution.

Based upon the evidence provided by the Government—including a letter detailing a restitution request from Jenny's counsel; a victim impact statement; a psychological assessment; and a letter calculating the value of certain losses for Jenny by Smith Economics Group—the Court finds that Jenny's total losses are between $1,753,972 and $3,002,606.[12] *See* [ECF No. 53-7] ("Exhibit G").

---

[11] The Court takes a conservative approach in calculating Fiona's total loss amount. This amount is based on Fiona's lost earnings until age 67 and the cost of future medical treatment and therapy. Ex. F at 207. Given that these two metrics trigger an award of restitution, the Court need not opine on whether loss of enjoyment of life can be considered.

[12] The Court takes a conservative approach in calculating Jenny's total loss amount. This amount is based on Jenny's lost earnings until age 67 and the cost of future medical treatment and therapy. Ex. G at 92.

Having established that restitution is due, the Court turns to the *Paroline* factors to determine the relative role Defendant played in causing Jenny's losses. Upon consideration of the factors—particularly the number of images possessed by Defendant (6 images); the amount of prior restitution orders ($113,862); and whether Defendant played a role in the production of the images (he did not)— the Court concurs with the Government that an award of restitution in the amount of $3,000 is appropriate.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that restitution is awarded by the Court as follows:

- Maureen: $3,000
- Pia: $5,000
- Violet: $10,000
- Maria: $3,000
- Tori: $3,000
- Fiona: $3,000
- Jenny: $3,0000

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 4th day of February, 2022.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

Given that these two metrics trigger an award of restitution, the Court need not opine on whether loss of enjoyment of life can be considered.